My name is Sherry Long-Cotton, and I represent Tyrone Patterson, the plaintiff and the appellate in the case that is now before you. A little background. About a year ago, I was walking my 110-pound footlocker. In my neighborhood, everyone was fine. And as we are walking down the street, she's very protective, we pass a fence, and there's a collision against the fence, a loud barking, and my pit bull to protect me lunges in front of me. I fall dead on my fist. I did a short punch to the applicant, just like Mr. Patterson suffered. I could not move. I rolled around on that ground thinking that some enormous animal was going to come and get me, while my dog still frantically barked. This is a case of excessive force. This is a case that the jury did not award damages, although we won the excessive force case. And the reason the jury didn't award damages is speculated, we don't know, but opposing counsel has taken the position that they didn't award damages because the force that was exercised was appropriate. The very first physical force used against Mr. Patterson was a closed fist punch to the abdomen. From that point forward, he rolled around on the ground and was kneed, kicked, and finally given some peace, raised up, and allowed to have himself handcuffed and taken into custody. There is no factual basis that would justify a ruling that any force was appropriate. What was the nature, was there a dispute between the police and the plaintiff here in terms of, as I understand the facts, they came to ask him to depart the premises. And he refused. What do the facts show as to his willingness to depart without the use of some force on behalf of the police officers? Well, it shows that he didn't fight physically, he just said he wasn't going to leave. He said he wasn't going to leave, and then the officer was standing behind him, handcuffed him, or attempted to handcuff him. While he was handcuffing, the officer fell against a grill, took everybody down to the ground. The plaintiff scooted himself up against the wall of the house. The officer punched him into the abdomen to get him to confess. Was there a different version of what you described presented to the jury? No, sir. Getting down really to the jury's verdict, the jury found force, found excessive force. The argument is, from the defendant's side, is there must have been some appropriate force. If you follow the continuum of force, the first physical force was the punch. There is no room for any other type of force. But once that was executed, that's all there was. You know, there's one other issue here that I brought up, I want to really get before you, and that is, what is the value of the jury statements? In this particular case . . . Is that common in Nebraska for jurors to . . . it seems kind of unusual for jurors to comment to the parties on the nature of their verdict and its rationale. Is that common in Nebraska? Sir, it's been a while since I practiced in Nebraska. I practiced when I was a city attorney with Tom here, and I had several cases. I don't know if it's common or not, but I want to tell you about this jury. This jury took notes. This jury was interested. This jury wanted to make sure that they were going to be understood, because both the attorneys for the defendant and the attorneys for the plaintiffs . . . We instructed them that they are the ones that have to know what's going on. They are the ones that have to pay attention. They are the ones that have to make a ruling, and they took notes. The jury wanted the court to know why they ruled. The jury wanted the court to know number one. You took any force you took. You moved too soon. Any force you took. That was their note to the defendants. Did the jury make a finding, or is it known in the facts of this case, at what point the plaintiff's ribs were broken? Was that from the first punch, or was it from the fall? The medical doctor indicated that based on a reasonable medical belief, it was broken. The last force, which was a side kick, supposedly to the side hit the abdomen. That is the blow, it is believed, that broke the five ribs and tore the intestines. Didn't the jury note suggest that some force was necessary? No, what the jury said was, when you speak of force, by the way, the continuum of force starts with officer presence, verbal commands, soft hand touches, which is just restraint, then moves into a punch to the abdomen, a knee kick to the thigh to bring him down, and then a side kick by the foot. So when you're talking force, you're talking about force beginning with verbal. And yes, this is what they said. To Officer Hastic, it appears that some force was necessary. However, we felt that it escalated too quickly and to a level that crossed a line of excess for the level of resistance. We believe that more time could have been spent diffusing the situation to potentially avoid a physical contact. But they did reach a verdict that sounds somewhat different than the statement. Well, there's a reason for that. We found there was force. One thing, though, I would say as a former trial judge, it's unusual to see a jury that's so well versed in writing. They're quite impressive about the care that they took in explaining how they saw it. Now, did you try the case? Yes, ma'am. These jurors were teachers, managers. Some had relatives that were police officers. And the jury did make a – they did explain why they gave no damages to Patterson. The problem is that the reason they did was more of a reason for denying someone negligence as opposed to excessive force. And what they said was, to Mr. Patterson, it's unfortunate that you sustained these injuries. However, you are responsible for your own actions when you fail to comply with the officer's instructions. That's a but for. That is not permitted in an excessive force argument because excessive force already has the first supposition is that someone is going to resist, is going to move back. That does not mean that you can use improper force. It means you use necessary force. And they exceeded necessary force when it was obvious that Mr. Patterson could not move. And they continued. Do you find that there was any error in the jury instructions? Sorry? Do you believe there was any error in the jury instructions? No, I don't believe there was error in the jury instructions. I simply believe that the judge did not look at the explanations by the jury as face value. That the judge inserted his own opinion of what the jury instructions were saying. You know, sometimes if you just listen to what a person says and not what you think they say, you might understand them a little better. But are we- There is no evidence, sir. Are we to give more credence to their statement versus what their ultimate verdict was? That has happened. It happened in the Greek law case. Here, let me ask this way. Do we know that every juror agreed with or some percentage of jurors agreed with the statement that was issued? Yes, sir, because that statement was issued in bank. They had asked a question if the jury could write a statement to. And this statement was written as a bank of statements. This was not one person saying this and one person saying that. They all agreed. This statement was presented right after they had entered their verdict. Did the judge ask the jurors if they all agreed with the statement? You know, I'm going to have to go back and look at the transcript. But I cannot imagine our judge- Our judge makes no judgment for years. I cannot imagine that he would allow a statement in that was not agreed to by all the jurors without identifying it. I can't imagine he would let a statement in. Well, I agree with my colleagues. It seems very odd. I've never seen a situation where there's been a jury statement, so to speak. You have to know this jury. Counsel, in Nebraska, is there a bifurcation between the liability phase and the damages phase? So can this be-as I understand what you're requesting is for us to send this back for trial just on the damages. Would a new trial more likely require a full retrial on liability and damages? No, I'm not aware that it would. I believe it could be against damages, but I would be prepared if it were retried. Probably the right for it to be retried if it were for everything except for damages. But I don't think that would be necessary in this instance. One thing-anything else? Well, are you relying completely on these comments by the jury? Sir, ma'am? Are you relying in your argument completely on the comments of the jury? No, my very first statement was that the facts did not support that there was any force that was appropriate. Given the example I gave, that from the very first time that he was punched in the abdomen, and that is not the action that injured, there isn't any contradictory expert opinion saying that the injury occurred as a result of the last instance of force, which was the kick to the abdomen. Didn't Dr. Hovey, though, concede that the injury could have been caused by the falling into the barbecue? Dr. Hovey did. He was his treating physician. However, the-and he had not-had very much experience in this. However, the expert who is the surgeon, who does nothing but these types of surgery, his statement was that it was so far-fetched to believe that this occurred by any other way, by falling against the barbecue pit. It was so far-fetched that he believed it was his best judgment that this occurred as a result of a kick. It was tearing that intestine, I believe, is the one that caused him to believe that even a closed fist punch, because it didn't have the right type of torque against it, would injure. With respect to the motion for summary judgment, yes, there was a motion for summary judgment. There was no opportunity to cross-examine anyone. I've never heard of a motion for summary judgment right before a trial. It took us about four or five months to complete this case when a one-and-a-half-day trial could have. In that, the defendant introduced witnesses that we did not have an opportunity to cross-examine and had not testified at trial, so we couldn't even present a transcript. Were they not available for discovery? Yes, but my case was not built around asking the person who actually did the investigation questioning him on anything other than the fact that one of the defendants had lied about the circumstances. The only question I would have had to him is, how many of these times when you say that you couldn't reach a conclusion because the facts were differing among the witnesses, how many times was it that the officers had the difference? How many times could you not come to a conclusion of whether or not excessive force was used because one officer said nothing happened and the other one did? If I could have gotten an answer for him saying it was a certain percentage of time, I think I would have been able at that time to demonstrate that this was a patent in practice. I did not have an opportunity to present any evidence because my very strategic opponent made sure that there was no record of any testimony of the witnesses that he presented to support on that particular issue. Mr. Mumgaard. I'm Tom Mumgaard. I'm appearing today on behalf of the City of Omaha and the defendant police officers, Molly Hyatt and Paul Hasiak. I'll begin with the nominal damages issue. That challenge relies entirely on one premise, that all the force used against Mr. Patterson was excessive and was the force that caused his injury. The plaintiff's brief on appeal says so as much on page 18. The problem with that is, as has been pointed out, there was a great dispute in the testimony about what force was used, when it was used, and the result of that force. Mr. Patterson tells a story where the officers immediately jumped in and started beating him up. The officers told a different story about how this dispute was going on and that Mr. Patterson was not willing to leave and so they placed him under arrest. He resisted. Force began. That force was nothing other than just trying to put his arms behind his back. The officer, Mr. Patterson, then unintentionally fell into the barbecue grill, knocking it, pinning it up against the house, and then fell to the ground. Thereafter, the officer used force, various techniques, to try to subdue him. The problem with their argument is there were at least four, possibly five, instances of force the jury could have found was reasonable and caused the injuries. The grill, the fall to the ground, the punch, the knee strikes. The argument of the plaintiff here relies on a finding by you that the evidence is so clear that it establishes that a reasonable jury could only come to one conclusion. Do we know which of those uses of force the jury found to be unreasonable? We do not. We have, as you pointed out, this very unique jury statement. In 30 years of practice in the District of Nebraska, I've never seen it before either. This jury came out with an explanation of their decision, and they specifically told Mr. Hacio that some force was necessary, meaning, well, okay, you began okay. Then it escalated too quickly to a level where it crossed the lines. Was the medical testimony such that it was reasonable to believe that the kick near the end of the conflict to the midsection was probably what broke the ribs and injured the intestine? Well, you're okay until you get to the probably part. The medical testimony was equivocal as to what caused the injury. Let's start with what was the injury. It was broken ribs and then some torn intestines as a result of the broken ribs. That was the only injury we were talking about here. The medical testimony about the cause of that injury was equivocal because they said the doctors testified, they agreed that it was caused by trauma, but they could not say what type of trauma would cause this injury. They did say, well, Dr. Hovey at least did say, that the most probable cause was a kick to the ribs, but Dr. Stier couldn't say with any medical degree of certainty which of these four to five uses of force could have caused this injury. Dr. Hovey said, well, the most probable was kick to the ribs, but that hitting the grill with force could be a possible cause if the force was sufficient, was great enough. What we have here is two sizable men who are basically in a pushing and pulling attitude falling against a typical barbecue grill with edges, sharp edges, pointed edges on it, pinning it up against the house. So certainly the jury could have found that that force in and of itself was enough to break the ribs. Counsel, what authority stands for the proposition the jury could use a kind of contributory negligence theory to, in essence, negate damages for physical injury? Well, I think it's hard to say in this case that that's what the jury did. The jury's statement certainly said, Mr. Patterson, it was your own fault. You shouldn't have gotten into this hassle. I don't think that's a statement of contributory negligence. I think that's just giving instruction to Mr. Patterson, improve your conduct in the future. But it's basically you can't recover for physical injury because the police had to come get you out of your mama's house. I don't think that's what they were saying. The jury was saying if you read, I think you have to read those statements separately. They're specifically addressed to different people. It sounds a lot like they're saying you wouldn't have gotten hurt but for your own fault. Well, they may have been saying that, and I stress the may, because here's the problem with the whole package and relying upon the jury statements. We don't really know what they were saying. We don't really know what evidence they were relying upon and what evidence they were discounting. All that we know is what they said, and they very clearly said, well, some of the force was necessary, but then you escalated. So if they say some of the force was necessary, that's in effect saying if this injury occurred during the use of that force, you don't get any, you haven't proven your causation of injuries resulting from the excessive force. They were saying to the point of you have failed to prove causation of your injury was the excessive force because some of the force, they clearly said, was necessary. And I point to the barbecue grill, the falling into the barbecue grill. If that's what the jury was saying, which I think is the only reasonable conclusion you can come from these very unique and uncommon jury statements, if that's what they're saying, then they're falling clearly within the teaching of the Westcott decision. Well, it sounds like we're coming up with possibilities of what they meant, which is speculation on your part and mine. No, I don't think it is. Well, okay, I'll say it is speculation. And that was why, once you concede that, that's why the plaintiff's appeal must fail because you have to keep in mind that the challenge to the jury decision was made here on a motion for new trial. And the standard there is abuse of discretion with deference to the trial here, with deference to the trial judge. Now, the trial judge looked at what the jury was citing. And he concluded that the jury, that the evidence, let's put aside the statements. Let's just look at the evidence. The trial judge concluded that there was sufficient evidence here that a reasonable jury could have come to the conclusion that these injuries were caused by reasonable force or was caused by, at most, a negligent force to fall into the grill. The district judge said, you know, just looking at the evidence, putting aside the statements, there was sufficient evidence of permissible force that could have caused, doctors say, could have caused this injury. But it's very simple. The jury may well just be saying, we looked at all the evidence and we determined that the causation was not proven as is required. And that falls within one of the three parts of nominal damages allowed under the West Coast. How long did the jury delivery? Oh, you got me there. A significant amount of time. I mean, not days or anything like that. But they came back. They asked, I think, three questions clarifying what it was. And then they asked, well, could we make these, could we make this statement? Well, the judge said, sure, make the statement if you want to. I would point out that those statements were never filed by the court. They get into the record by way of a motion for a new trial by the defendants. So what are they? I'm not really sure what they are. Did the statements come with the verdict, after the verdict? And is there any indication that they were agreed to by the entire jury or some portion of the jury? They came at the same time as the verdict. The only indication as to who's behind the statements is that it was signed by the jury. Whether everybody in the jury agreed with that statement or not, there is no indication in the record. Was it signed by the foreperson or did they all sign it? Well, it was signed by the foreperson, I believe. They're in the record, and I have my memories right. But I believe they were signed by the foreperson. Same as if the jury one was. So as I pointed out in my brief, I guess if you're going to give any significance to those statements, you treat them as answers to specific interrogatories. We started with a general verdict and moved into answers to specific interrogatories. What we come down to is... Well, that's actually a good question. I mean, I sort of wonder if we can even consider them. I mean, if you look at them as a response to interrogatory, we would probably consider them. If you look at it as potentially a lawyer going afterward and trying to interview the jury and look behind the verdict, I think that may even be forbidden by certain rules. That certainly would be. So I don't know exactly how... I don't either, particularly. I guess you look at it that, well, there's... And this is what the district judge did. You can look at it that there's two ways of looking at it. One is you give some credence and try to understand what the jury was saying by way of their statement, or you just look at the evidence. And the district judge said, well, either way, you end up with the... three parts that, well, there's sufficient question of causation here that the plaintiff has failed to carry the burden. And that should be enough. And keeping in mind that what we were talking about is a challenge that was made on a motion for new trial. And so the standard of reversal is very high. You have to find that a new trial is necessary to avoid a miscarriage of justice. And I would suggest that the only way you can get to that is to conclude that the evidence of causation was on one side. And the only way you can get to that is to read the doctors. Really, the only evidence of causation came from the two physicians who testified. The only way you can...you have to read their testimony as being absolutely certain that this is the one and only cause that, let's say, you pick one of the four or five uses of force. Let's say we'll pick the kick, which was actually a legitimate kick that ended up hitting... Mr. Patterson moved and it hit him someplace other than where it was aimed. The only way you can reverse this is to find that those doctors were so unequivocal that the only cause here could have been that kick. The only cause here could have been excess force. You either have to find their testimony saying that, which clearly it is not, or you have to say, no, a jury cannot ignore those physicians. When the physicians say that the most probable cause is blood trauma, they all say trauma, the most probable cause is trauma by a kick, you would have to say the jury cannot go beyond that. They cannot go into the doctor...they cannot give any credence to the doctor saying, well, yeah, these other things could have done it. Maybe they're not the most probable, but they could have done it. Well, that's not the way juries are allowed to look at testimony. They're allowed to credit or discredit whatever they want to. So as we sit here and try to speculate or try to discover what was the jury saying, we can look at it and say, well, I think the jury was saying that they understood the doctors to say that there were possible other causes here, and those possible other causes would have been legitimate force or just an accident, falling into the grill. Once we get to that, which I think is what the record compels us to get to, then the standard for reversing the jury decision on a motion for new trial is not met, is missed by a mile because there's no miscarriage of justice here. With respect, quickly, to the summary judgment, it was unique. It occurred primarily because there was a change of counsel prior to trial, expectations as to how that was going to be handled changed. So after a verdict was decided, well, so during trial we had to bifurcate the trial to exclude some of the evidence on the policy issues because of the prejudice. After the trial it was very clear that there was going to be no more evidence here. We'd already covered it. The only testimony was going to be by identified witnesses by affidavit. The most efficient way to approach that was a motion for summary judgment. The court looked at that and said, well, sure, you've had your opportunity to do all the discovery that you needed to do. Let's decide if the evidence is one-sided. It was. The efficient capacity claims, the defendants were entitled to summary judgment on those, and summary judgment was granted. It was very simple. Was there any request for additional discovery? No. We'd had a pretrial order. We'd had a pretrial conference. All the witnesses were listed. All the exhibits were listed. Discovery hadn't been done. There had been no effort to look into and discover on the official capacity or policy claims. Apparently it was effectively abandoned by the time we got to trial, and then we have new counsel and the plans change. So when we get to after the individual capacity trial, the most efficient thing to do is to simply take care of those with summary judgment. And they didn't even produce any evidence to dispute the summary judgment. They just simply gave me a chance to cross-examine. Unless you have any other questions, thank you very much. You used your time. I'll give you one minute. Oh, thank you. That's all I really needed was one minute. When we were talking about whether the actual cause of the injury, when the doctor, Dr. Hubby, who was the surgeon, when he did testify, he explained why it was the kick. He explained that the reason that it was the kick is because the way that the intestines were torn, there is no other way that intestines can be torn like that unless they have a hard surface pushing them and holding them up against the spine. That is what tore the intestine. A knee wouldn't do it. A fist wouldn't do it. And that is why quite a bit of attention was paid to the officer's shoes. The other one I've forgotten that I wanted to address. Oh, so I'll just leave it with the fact that the doctor did testify that that was the only way that intestine could have been torn. It has to be excused. Thank you. Oh, one more thing. I didn't do any of the discovery at all. I came into this case. Well, that was the question I had. Did you ask to do any discovery after the initial trial was over? I came in two weeks before the trial. I asked for an extension of time only to become familiar with the case. But you didn't ask for any discovery on the custom policy question? On the custom policy question, I didn't see any reason to ask for any discovery on that one. I was pretty familiar with it. My only issue was that the people that were called as witnesses, they didn't have any knowledge about the way that the policy was carried out. And you can have a policy. If you have no testimony on how it's carried out, all you have is policy in the air. And that was my discussion, is we never had an opportunity to cross-examine these new witnesses to determine did they actually carry out the policy or did they know how it was carried out. Any excuses? Yes, thank you very much, both of you. We will take it under careful consideration.